UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| ARTHUR LONG,<br><br>      Plaintiff,<br><br>    vs.<br><br>OFFICER BRENT ABBOTT, MICHAEL SAUSCHUCK and CITY OF PORTLAND,<br><br>      Defendants | Civil No. 15-0291-JAW |

## **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, WITH INCORPORATED MEMORANDUM OF LAW**

Defendant Brent Abbott, in his capacity as a Portland Police Officer, was dispatched to respond to a citizen complaint of persons drinking in public and loitering. It is not disputed that Plaintiff Arthur Long intentionally failed or refused to provide his name and birth date to Officer Abbott after several requests and after being warned that he could be arrested for failing to do so, or that Officer Abbott arrested Mr. Long for failure to give correct identification. While Defendants Brent Abbott, Michael Sauschuck and City of Portland acknowledge that there are certain details in dispute as to what happened during this incident, the Defendants believe that they are entitled to summary judgment even if the Court credits Mr. Long's admissions and other statements. Pursuant to Federal Rule of Civil Procedure 56, the Defendants request summary judgment on all counts in the Plaintiffs' Fourth Amended Complaint.

## BACKGROUND

### I. FACTS

The factual background for the Motion for Summary Judgment is set forth in the accompanying Statement of Material Facts, which is hereby incorporated by reference.

## II.     PROCEDURAL POSTURE

The Plaintiffs commenced this action by a Complaint filed on July 22, 2015.  After several amendments to the Complaint, the operative pleading is now the Fourth Amended Complaint. Mr. Long asserts claims against Officer Abbott, Chief Sauschuck and the City in five counts: violation of 42 U.S.C. § 1983 against Officer Abbott (Count I); violation of 42 U.S.C. § 1983 against Chief Sauschuck (Count II); violation of 42 U.S.C. § 1983 against the City (Count III); assault against Officer Abbott (Count IV); and "unlawful arrest" against Officer Abbott (Count V).  The Defendants filed an Answer denying the material allegations of the Fourth Amended Complaint and asserting numerous affirmative defenses, including: failure to state a cognizable claim; qualified immunity; discretionary function immunity; and failure to comply with the procedural requirements of the Maine Tort Claims Act.

## ARGUMENT

### I.     THE RECORD EVIDENCE DOES NOT SUPPORT LIABILITY AGAINST ANY OF THE DEFENDANTS FOR CONSTITUTIONAL VIOLATIONS.

Mr. Long assert claims under 42 U.S.C. § 1983 alleging that his federal constitutional rights were violated as a result of the incident with Officer Abbott on August 9, 2014. Mr. Long alleges that he was arrested without probable cause, that he was wrongfully searched without a warrant, and that he was subjected to excessive force during the course of the arrest. Mr. Long's claims all fall under the rubric of the Fourth Amendment. *See Alexis v. McDonald's Rest.*, 67 F.3d 341, 349 (1st Cir. 1995) (seizures analyzed under the Fourth Amendment); *Graham* v. *Connor*, 490 U.S. 386, 394 (1989) (when a claim of excessive force is asserted as a result of an arrest or investigatory stop of a free citizen, the claim is analyzed under the Fourth Amendment).

### A. Mr. Long's claim for wrongful arrest fails because – even taken in the light most favorable to him – the circumstances known to Officer Abbott were sufficient to establish probable cause.

In order to conform to the Fourth Amendment's guaranty against unreasonable seizures of the person, a police officer is required to base arrests on probable cause. *Beck* v. *Ohio*, 379 U.S. 89, 91 (1964); *Alexis v. McDonald's Rest.*, 67 F.3d 341, 349 (1st Cir. 1995). "The 'probable cause' analysis entails 'an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time and not [an assessment of] the officer's state of mind at the time the challenged action was taken.'" *Alexis*, 67 F.3d at 349 (quoting *Maryland* v. *Macon*, 472 U.S. 463, 470-71 (1985) (internal quotation marks omitted)). Probable cause exists if "the facts and circumstances within [the officer's] knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent [person] in believing that the [defendant] had committed or was committing an offense." *Rivera* v. *Murphy*, 979 F.2d 259, 263 (1st Cir. 1992). "And, moreover, though probable cause requires more than mere suspicion, it does not require the same quantum of proof as is needed to convict." *Logue v. Dore*, 103 F.3d 1040, 1044 (1st Cir. 1997) (citing *United States* v. *Aguirre*, 839 F.2d 854, 857-58 (1st Cir. 1988)).

Officer Abbott arrested Mr. Long for failure to give a correct name or date of birth. Title 17-A, Section 15-A of the Maine criminal code provides in pertinent part:

> Any person who a law enforcement officer has probable cause to believe has committed or is committing a crime other than one listed under section 15, subsection 1, paragraph A, and to whom a law enforcement officer is authorized to deliver a summons pursuant to subsection 1, who intentionally fails or refuses to provide to that officer reasonably credible evidence of that person's correct name, address or date of birth commits a Class E crime, if the person persists in the failure or refusal after having been informed by the officer of the provisions of this subsection.

17-A M.R.S. § 15-A(2). Subsection 1 of Section 15-A provides that "[a] law enforcement officer who has probable cause to believe a crime has been or is being committed by a

person may issue or have delivered a written summons to that person directing that person to appear in the appropriate trial court to answer the allegation that the person has committed the crime." Further, Maine law provides that a law enforcement officer may effect an arrest without a warrant of a person who "has committed or is committing in the officer's presence any Class D or Class E crime." 17-A M.R.S. § 15(1)(B).  Finally, for the purposes of effecting a warrantless arrest, a crime occurs in an officer's "presence" when "one or more of the officer's senses afford that officer personal knowledge of facts that are sufficient to warrant a prudent and cautious law enforcement officer's belief that a Class D or Class E crime is being or has just been committed and that the person arrested has committed or is committing that Class D or Class E crime." 17-A M.R.S. § 15(2).

Even accepting Mr. Long's version of events, there would be sufficient information known to Officer Abbott to support his decision to arrest Mr. Long for failure to provide correct name or date of birth. First, it should be noted that Mr. Long does not contest the existence of most of the elements of the crime: Mr. Long admits he intentionally failed or refused to provide his name and birth date (or identification that contained that information) on several occasions; Mr. Long admits he was told that he was suspected of drinking in public; and Mr. Long admits that he was advised that he could be arrested if he did not provide his name and birth date (or identification that contained that information). Mr. Long appears to suggest that Officer Abbott did not have probable cause to believe Mr. Long had committed or was committing a crime.

However, even with regard to this "disputed" issue, the record establishes that the information known to Officer Abbott was "sufficient to warrant a prudent [person] in believing that the [defendant] had committed or was committing an offense" – the offenses of drinking in public and loitering. *Rivera* v. *Murphy*, 979 F.2d 259, 263 (1st Cir. 1992).

Officer Abbott was called to respond to a report of 4-5 males drinking in public and loitering outside of 24 Preble Street. Upon arriving there, he found two men – one of whom was Mr. Long – seated on the stairs in front of that location, each with an open beer can next to him.[1] Officer Abbott observed that he cans had "sweat lines" – indicating to him that they were at least partially full. Finally, he believed that 24 Preble Street was within 200 feet of one of the City's postings that prohibited drinking in public.

These facts are sufficient to warrant a prudent person in believing that Mr. Long was guilty of drinking in public. Title 17, Section 2003-A of the Maine Revised Statutes provides in pertinent part:

> A person is guilty of public drinking if the person drinks liquor in any public place within 200 feet of a notice posted conspicuously in the public place by the owner or authorized person that forbids drinking in the public place or after being forbidden to do so personally by a law enforcement officer, unless the person has been given permission to do so by the owner or authorized person.

17 M.R.S. § 2003-A(2). Section 2003-A goes on to state that "[t]he possession of an open container of liquor in a public place is prima facie evidence of a violation of this section." § 2003-A(3). Mr. Long's presence where males were reported to have been drinking in public, and the fact that Mr. Long was next to an open and partially full can of beer in an area the City routinely posts with signs prohibiting public drinking, constitute sufficient information to establish the elements of the crime. Although Mr. Long may have stated that the beer was not his, a reasonable officer could still conclude that he "possessed" a container of liquor in

---

[1] Pursuant to the provisions of Federal Rule of Civil Procedure 36, Mr. Long admitted that "[w]hen Portland Police officers first spoke with Plaintiff Arthur Long on August 9, 2014, he was seated next to an open can of beer." (Plaintiff's Amended Response to Defendant City of Portland's Request for Admissions ¶ 18 (hereinafter "Pl's RFA Resp. ¶ _____")). Although Mr. Long suggested during his deposition that the closest can of beer was several feet from him, his admission is conclusive as to this issue. Fed.R.Civ.P. 36(b); *see also United States v. Kasuboski*, 834 F.2d 1345, 1350 (7th Cir. 1987) ("Affidavits and depositions entered in opposition to summary judgment that attempt to establish issues of fact cannot refute default admissions."). In any event, it is undisputed that the circumstances were such that even Mr. Long considered the beer to be "next to" him. Therefore, Officer Abbott was entitled to draw the same conclusion.

a public place by having it next to him (in combination with the other information referenced above), and thereby established a prima facie violation.

Similarly, the information available to Officer Abbott was sufficient to warrant a prudent person in believing that Mr. Long was guilty of loitering. Under Section 17-1 of the City's Code of Ordinances, a person is guilty of loitering if he does the following despite a warning from a police officer:

1. Obstruct[s] any public street, public highway, public sidewalk or any other public place or building by hindering or impeding or tending to hinder or impede the free and uninterrupted passage of vehicles, traffic or pedestrians; [or]

2. Commit[s] in or upon any public street, public highway, public sidewalk or any other public place or building any act or thing which is an obstruction or interference to the free and uninterrupted use of property or with any business lawfully conducted by anyone in or upon or facing or fronting on any such public street, public highway, public sidewalk or any other public place or building, all of which prevents the free and uninterrupted ingress and egress therein, thereon and thereto….

City of Portland, Me., Code of Ordinances § 17-1(b)(1-2) & 17-1(c).[2] Officer Abbott was aware of a report of loitering by males in front of 24 Preble Street and found Mr. Long sitting on the stairs in front of that address. Given Mr. Long's presence at the point of ingress and egress to 24 Preble Street, Officer Abbott was justified in concluding that Mr. Long was hindering or impeding the use of property by remaining on the steps. Officer Abbott advised Mr. Long that he was loitering. Mr. Long refused to comply with Officer Abbott's requests for information so that he could be sent on his way. Based on these facts, Officer Abbott had probable cause to believe that Mr. Long was loitering. For all of these reasons, Officer Abbott's arrest of Mr. Long for failure to provide correct identification was supported by probable cause.

---

[2] A "public" place under this provision of the Ordinances is not limited to governmental buildings or spaces; rather, it encompasses any place that the public has a right to access, including stores, shops, restaurants, taverns or other business places. City of Portland, Me., Code of Ordinances § 17-1(a)(2).

### B. Officer Abbott's removal of Mr. Long's wallet was incident to a valid arrest based on probable cause and was therefore lawful.

While it may be true that Officer Abbott removed Mr. Long's wallet before he announced to Mr. Long that Mr. Long was under arrest, this action (assuming it was a search) was lawful as incident to an arrest. It is established law that a law enforcement officer may search a person incident to a valid arrest without the requirement of a warrant. *United States v. Robinson,* 414 U.S. 218, 235 (1973) ("[I]n the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that amendment."). It follows, therefore, that if an arrest is lawful, a searching officer does not need to have any further justification for performing a search of an arrestee. *See United States v. Bizier*, 111 F.3d 214, 217 (1st Cir. 1997).

Even if Officer Abbott's actions in removing Mr. Long's wallet occurred before he announced to Mr. Long that Mr. Long was under arrest, his action did not amount to an unlawful search. As the Defendants have argued, Officer Abbott had probable cause to arrest Mr. Long for failing or refusing to provide identification at the time he removed the latter's wallet. If Officer Abbott had removed Mr. Long's wallet after he had announced that Mr. Long was under arrest, clearly there would be no basis for a Fourth Amendment search claim. The only reason events happened in the order they did was Officer Abbott was trying to avoid taking Mr. Long into custody by trying obtain Mr. Long's information before he announced that Mr. Long was under arrest. This act of largess on Officer Abbott's part should not transform what was – in effect – a lawful search incident to arrest into a Fourth Amendment violation. Moreover, due to the fact that Mr. Long's wallet did not contain identification, the events played out exactly as if Officer Abbott had first informed Mr. Long

that he was under arrest. Under these circumstances, the Court should grant the Defendants summary judgment on this issue.

### C. Officer Abbott's alleged actions cannot support a claim of excessive force under the Fourth Amendment because his alleged actions were not objectively unreasonable as a matter of law.

When a claim of excessive force is asserted as a result of an arrest or investigatory stop of a free citizen, the claim is analyzed under the Fourth Amendment. *Graham* v. *Connor*, 490 U.S. 386, 394 (1989). A person can state a viable excessive force claim under the Fourth Amendment only if he or she can demonstrate that the police officer's actions were not objectively reasonable, viewed in light of the facts and circumstances confronting him or her and without regard to his or her underlying intent or motivation. *Id.* at 397. The Supreme Court has emphasized that the officer's actions must be analyzed from the perspective of "a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396 (citations omitted). Moreover, the Supreme Court has held that "'not every push or shove'" will reach the level required for a viable excessive force claim. *Id.* (citation omitted); *Gaudreault* v. *Salem*, 923 F.2d 203, 205 (1st Cir. 1990), *cert. denied*, 500 U.S. 956 (1991).

The United States Court of Appeals for the First Circuit's application of these standards suggests that Mr. Long's claim does not rise to the level of a Fourth Amendment violation. For example, in *Fernandez-Salicrup v. Figueroa-Sancha*, 790 F.3d 312 (1st Cir. 2015), the plaintiff was arrested on charges of rioting and causing aggravated damages after a colloquy with a law enforcement officer that occurred during a tumultuous student protest. *Id.* at 316. The officer believed the plaintiff was involved in the protest and he confronted her. *Id.* When the plaintiff "expressed her displeasure" with the officer's tone of voice, the officer shoved her face-first against a wall and placed a handcuff on her. *Id.* The

plaintiff brought Fourth Amendment claims against the officer and others for unlawful arrest and use of excessive force. The district court granted the officer summary judgment and the plaintiff appealed.

With regard to the excessive force claim, the First Circuit affirmed summary judgment. *Id.* at 326-27. The Court applied the Fourth Amendment test adopted in *Graham* and concluded that the plaintiff's allegations failed to generate a viable constitutional claim:

> Assuming the encounter occurred as Fernández describes – as we must in the summary judgment context – Fernández was seemingly arrested for, at best, obstructing a police investigation and/or disorderly conduct by "disrespecting" Rosado and talking back to her. Either, obviously, is not a severe crime, and – at least based on this version of events – Fernández never posed an immediate threat to Rosado or others. As such, only a minimal level of force by Rosado would be reasonable under the circumstances. Yet even with this low threshold, Plaintiffs are unable to establish a constitutional violation. In effectuating the arrest, Rosado shoved Fernández face-first against a wall and proceed to handcuff her left wrist. There is no evidence in the record that this technique deviated from standard police practice. *See* [*Calvi v. Knox Cnty.*, 470 F.3d 422, 428 (1st Cir. 2006)] ("Standard police practice [in Knox County, Maine] called for cuffing an arrestee's hands behind her back and [the officer's] decision not to deviate from this practice was a judgment call, pure and simple. . . . That is the end of the story."). And, even if it did, the Supreme Court has recognized that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham*, 490 U.S. at 396 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)) (internal quotation marks). Rosado's shove of Fernández may have been unnecessary, but it was not unreasonable.

*Id.* at 326-27.

The First Circuit reached a similar result in *Dean v. City of Worcester*, 924 F.2d 364 (1st Cir. 1991). In that case, Worcester police officers mistook the plaintiff for an escaped felon and arrested him, taking the plaintiff to the ground and shoving him up against a wall in the process. *Id.* at 366. The district court granted the officers summary judgment and the First Circuit affirmed. The First Circuit noted that "[i]t has long been recognized that 'the

right to make an arrest or an investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.'" *Id.* at 368-69 (citing *Graham*, 490 U.S. at 396). In addition, the court emphasized that "[t]he reasonableness of the force used is determined not only with reference to the need for the arrest and for reducing risk to the officers and the public but also with reference to the manner in which the arrest is effected." *Id.* at 369 (citing *Tennessee v. Garner*, 471 U.S. 1, 8 (1985) (constitutionality of seizure depends, *inter alia*, on "how it is carried out")).

The First Circuit held in *Worcester* that the plaintiff failed to demonstrate that the alleged use of force was objectively unreasonable. In pertinent part, the Court noted that the amount of force used was reliably informed by the fact that the plaintiff's injuries were relatively minor:

> The reasonableness of the arresting force in the present case was further confirmed by compelling evidence that Dean's alleged injuries, though most unfortunate, were minor. Dean alleges a scratch on the neck, bruises on his back and a cut on the nose. The hospital record reports: "no obvious signs of trauma." Dean did not seek out medical treatment until the following day, choosing first to consult with an attorney.

*Id.* at 369. The First Circuit concluded that "[t]hese minor physical injuries simply are insufficient to support an inference that the officers used inordinate force to effect the intended arrest in the 'tense, uncertain, and rapidly evolving circumstances,' *Graham*, 109 S. Ct. at 1872, surrounding the reasonably perceived need to subdue an armed felon on a busy city street." *Id.* at 369.

Even accepting Mr. Long's assertions, the force allegedly used to effect his arrest could not be viewed as objectively unreasonable. Mr. Long states that Officer Abbott pushed him down as he was preparing to apply handcuffs, causing Mr. Long's chest to hit

the stairs.[3] Mr. Long acknowledges that he did not sustain a bruise as a result of this incident and that he did not seek medical attention. These allegations are almost indistinguishable from those in *Fernandez-Salicrup*, a case in which the First Circuit determined that the officer's use of force did not violate the constitution as a matter of law. And although the perceived need for force may have been less in Mr. Long's situation than in *Worcester* (since Mr. Long was not suspected to be an armed felon), the amount of force described by Mr. Long was far less than that applied in *Worcester*. Moreover, where in *Worcester* the plaintiff received identifiable (if minor) injuries, Mr. Long has stated under oath that he did not even sustain a bruise and that he sought no treatment after the incident. Therefore, the circumstances alleged by Mr. Long are insufficient to support an inference that Officer Abbott used objectively unreasonable force to effect Mr. Long's arrest. To paraphrase the First Circuit, Officer Abbott's alleged push of Mr. Long "may have been unnecessary, but it was not unreasonable." *Fernandez-Salicrup*, 790 F.3d at 327. Officer Abbott is entitled to summary judgment on that ground.

### D. The record does not support any claims against Chief Sauschuck.

The First Circuit has stated that supervisory liability under Section 1983 usually arises in one of two ways: "either the supervisor may be a 'primary violator or direct participant in the right-violating incident,' or liability may attach 'if a responsible official supervises, trains, or hires a subordinate with deliberate indifference toward the possibility that deficient performance of the task eventually may contribute to a civil rights deprivation.'" *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 49 (1st Cir. 2009) (quoting *Camilo-Robles v. Zapata*, 175 F.3d 41, 44 (1st Cir. 1999)). "In the latter scenario . . ., the analysis focuses on 'whether the supervisor's actions displayed a deliberate indifference toward the

---

[3] Officer Abbott denies that this occurred. However, for the purposes of summary judgment only, the Court may assume that this allegation is true. Local Rule 56(g).

rights of third parties and had some causal connection to the subsequent tort.'" *Id.* In either circumstance, the plaintiff in a Section 1983 action "must show an 'affirmative link, wither through direct participation or through conduct that amounts to condonation or tacit authorization,' between the actor and the underlying violation." [4] *Id.*

The record in this case establishes that Chief Sauschuck cannot be held liable under either theory. First, it is undisputed that Chief Sauschuck was not present for and did not participate in the events on August 9, 2014. Therefore, there is no basis for a claim under a "direct participant" theory.

Similarly, there is no evidence of deliberate indifference on the part of Chief Sauschuck that was a moving force behind the alleged violation. Up through the events of August 9, 2014, Chief Sauschuck was not aware of any custom or practice of Portland police officers generally – or Officer Abbott in particular – engaging in any of the violations alleged by Mr. Long. Nor has Mr. Long identified any deficiency in training, supervision or hiring that was a causal factor in the alleged violations. It necessarily follows that Chief Sauschuck

---

[4] The United States Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) calls into question whether Section 1983 claims can be maintained against supervisors based on a theory of knowledge and acquiescence: "In a § 1983 suit or a *Bivens* action – where masters do not answer for the torts of their servant – the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *See id.* at 677. The First Circuit has yet to definitively rule on the effect of *Iqbal* in the context of claims against supervisors. *See, e.g., Ramirez-Lluveras v. Rivera-Merced*, 759 F.3d 10, 19 (1st Cir. 2014) (declining to "address what is a hypothetical argument" given the plaintiff's failure to meet the pre-existing standard for liability). However, other circuit courts have held that knowledge or deliberate indifference of a supervisor that a constitutional violation would occur at the hands of subordinates – in itself – does not give rise to liability under Section 1983. *See, e.g., Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010) ("In the due process context, this means the focus is on the force the *supervisor* used or caused to be used, the resulting injury attributable to his conduct, and the *mens rea* required of him to be held liable, which can be no less than the *mens rea* required of anyone else.") (citing *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)); *Dodds v. Richardson*, 614 F.3d 1185, 1204 (10th Cir. 2010) (a plaintiff can "no longer succeed on a § 1983 claim . . . by showing that as a supervisor [the defendant] behaved knowingly or with deliberate indifference that a constitutional violation would occur at the hands of his subordinates, unless that is the same state of mind required for the constitutional deprivation he alleges") (internal quotation omitted).

Since the Defendants believe that Mr. Long cannot meet the First Circuit's pre-*Iqbal* test, the Court need not decide whether that test is still viable. However, the Defendants do not waive the argument that the First Circuit's "supervisory liability" paradigm has been superseded – if not overruled – by *Iqbal*.

could not be deliberately indifferent, since there is no evidence to suggest that tasks were being "deficiently performed" to an extent that civil rights violations would occur or that Chief Sauschuck was aware of such deficiencies. *See Board of the County Comm'rs v. Brown*, 520 U.S. 397, 410 (1997) ("'deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action"). He is entitled to summary judgment on all of Mr. Long's claims.

### E. Plaintiff has not established a policy or custom of the City that was a moving force behind the alleged constitutional violations.

Governmental entity liability under 42 U.S.C. § 1983 can be assessed only "where the municipality *itself* causes the constitutional violation at issue. *Respondeat superior* or vicarious liability will not attach under § 1983." *City of Canton, Ohio v. Harris,* 489 U.S. 378, 385 (1989). The United States Supreme Court has required a plaintiff to demonstrate that a policy or custom of the governmental entity led to the constitutional deprivation alleged. *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 694 (1978). The plaintiff must show both the existence of a policy or custom and a causal link between that policy and the constitutional harm. *See, e.g., City of Canton,* 489 U.S. at 387-90; *Oklahoma City v. Tuttle,* 471 U.S. 808, 823 (1985).

Moreover, the policy or custom must be the result of acts or omissions of the municipality's policymakers that exhibit "deliberate indifference" to the rights of the municipality's inhabitants. *City of Canton*, 489 U.S. at 387-90; *Gaudreault v. Municipality of Salem*, 923 F.2d 203, 209 (1st Cir. 1990). The First Circuit has summarized the deliberate indifference standard as follows: "To demonstrate deliberate indifference a plaintiff must show (1) a grave risk of harm, (2) the defendant's actual or constructive knowledge of that risk, and (3) his failure to take easily available measures to address the risk." *Camilo-*

*Robles v. Hoyos,* 151 F.3d 1, 7 (1st Cir. 1998) (citing *Manarite v. City of Springfield,* 957 F.2d 953, 956 (1st Cir. 1992)).

There is no evidence in this case of a custom, policy or practice of the City of Portland that was the motivating force behind the alleged violations. The City's police department maintains policies that pertain to arrests, searches and use of force. Mr. Long has neither alleged nor demonstrated that those policies are deficient in any way or that they caused Officer Abbott to allegedly violate Mr. Long's rights. Moreover, Mr. Long has presented no evidence of deliberate indifference on the part of the City: he has not shown a grave risk of harm; he has not established the City's actual or constructive knowledge of any grave risk; and he has not shown that the City failed to take measures to address a known and grave risk. In fact, when Mr. Long was asked in discovery to produce all documents and things he was relying upon to establish that the City violated his rights pursuant to a custom or policy, his response was:

> The Constitution of the United States of America and 42 U.S.C. § 1983. We are hoping to find some smoking guns during discovery.

(Pl's Resp. RFP ¶ 17). Mr. Long has not produced any evidence to support the City's liability – let alone the "hoped for" smoking gun. The City is entitled to summary judgment on all of Mr. Long's claims.

## II.   OFFICER ABBOTT AND CHIEF SAUSCHUCK ARE PROTECTED FROM LIABILITY FOR ALLEGED CONSTITUTIONAL VIOLATIONS BY QUALIFIED IMMUNITY.

Officer Abbott and Chief Sauschuck are entitled to judgment on the Plaintiffs' civil rights claims based on qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v.*

*Fitzgerald*, 457 U.S. 800, 818 (1982)). As the United States Court of Appeals for the First Circuit has emphasized, qualified immunity affords officers broad protection even in circumstances in which they may have violated a plaintiff's constitutional rights:

> Thus, the qualified immunity inquiry does not depend on whether the warrantless entry was constitutional, but allows as well for the inevitable reality that "*law enforcement officials will in some cases reasonably but mistakenly conclude* that [their conduct] is [constitutional], and . . . that . . . *those officials* like other officials who act in ways they reasonably believe to be lawful *should not be held personally liable*." [*Anderson* v. *Creighton*, 483 U.S. 635, 641 (1987) (emphasis added)]; [*Burns* v. *Loranger*, 907 F.2d 233, 237 (1st Cir. 1990)]. In other words, qualified immunity sweeps so broadly that "all but the plainly incompetent or those who knowingly violate the law" are protected from civil rights suits for money damages.

*Hegarty v. Somerset County*, 53 F.3d 1367, 1373 (1st Cir. 1995) (emphasis in original) (citing and quoting *Hunter* v. *Bryant*, 502 U.S. 224, 229 (1991) (quoting *Malley* v. *Briggs*, 475 U.S. 335, 341 (1986)).

In applying these standards, there are two relevant inquiries: whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right; and whether that right was "clearly established" at the time of the defendant's alleged misconduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The Supreme Court has held that these inquiries do not have to occur in a particular order, and that a court is free to address the "clearly established" issue without first determining whether the facts that a plaintiff has shown make out a constitutional violation. *Pearson*, 555 U.S. at 236 (holding that the sequence set forth in *Saucier* "should no longer be regarded as mandatory").

The "clearly established" prong of the qualified immunity test involves two questions: (1) whether the legal contours of the constitutional right were sufficiently clear; and (2) whether in the specific factual context of the case, the violation would have been clear to a reasonable official. *MacDonald v. Town of Eastham*, 745 F.3d 8, 12 (1st Cir.

2014). Moreover, the Supreme Court has recently held that "clearly established" for purposes of qualified immunity means that the contours of the constitutional right are "sufficiently clear" that "*every* 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (emphasis added) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

Applying this test to the record in this case, it is apparent that Chief Sauschuck and Officer Abbott are protected by qualified immunity. As indicated above, Mr. Long is unable to establish a constitutional violation against either officer. Moreover, with regard to Chief Sauschuck, there is no record evidence to suggest that he had any reason to suspect that any of Mr. Long's clearly-established rights would be violated.

Similarly, even assuming the truth of Mr. Long's allegations, it cannot be said that every reasonable official would have understood that Officer Abbott's actions violated Mr. Long's clearly-established constitutional rights. Mr. Long does not deny that he was seated next to an open can of beer in a location where males were reported to be drinking in public. And it is undisputed that Mr. Long refused to provide the officers with his name and date of birth despite the warning that he could be arrested for doing so. It is at least arguable, therefore, that Officer Abbott had probable cause for an arrest and that he was therefore justified in removing Mr. Long's wallet and using some amount of force to effect the arrest. Even if he was mistaken in some of these judgments, his error would not preclude the application of qualified immunity: "*law enforcement officials will in some cases reasonably but mistakenly conclude* that [their conduct] is [constitutional], and . . . that . . . *those officials* like other officials who act in ways they reasonably believe to be lawful *should not be held personally liable.*" *Anderson* v. *Creighton*, 483 U.S. 635, 641 (1987) (emphasis added). Under the circumstances of this case, Officer Abbott is protected by qualified

immunity and is therefore entitled to summary judgment on all of Mr. Long's Section 1983 claims.

### III. OFFICER ABBOTT IS ENTITLED TO SUMMARY JUDGMENT ON THE PLAINTIFF'S STATE LAW CLAIMS DUE TO THE PLAINTIFF'S FAILURE TO COMPLY WITH PROCEDURAL REQUIREMENTS OF THE MAINE TORT CLAIMS ACT AND OFFICER ABBOTT'S ENTITLEMENT TO DISCRETIONARY FUNCTION IMMUNITY.

Mr. Long alleges claims against Officer Abbott for assault and "unlawful arrest." These claims appear to be pled separate from the Section 1983 claims, and Officer Abbott therefore interprets them to be tort claims. By failing to give timely notice as required by the Maine Tort Claims Act, Mr. Long is barred from asserting these claims. In any event, even taking Mr. Long's allegations as true, Officer Abbott is protected by absolute discretionary function immunity with regard to all tort claims.

#### A. To the extent Mr. Long is asserting tort claims, they are barred by his failure to provide timely notice under the Maine Tort Claims Act.

As a prerequisite to filing a claim under the Maine Tort Claims Act ("the Act") against a political subdivision or an employee of that subdivision, a person is required to serve notice of that claim on the political subdivision consistent with the Maine Rules of Civil Procedure. 14 M.R.S. § 8107(3)(B). The Act provides, in relevant part, that "[w]ithin 180 days after any claim or cause of action permitted by this chapter accrues, or at a later time within the limits of section 8110, when a claimant shows good cause why notice could not have reasonably been filed within the 180-day limit, a claimant or a claimant's personal representative or attorney shall file a written notice containing [certain enumerated pieces of information about the alleged claim]." 14 M.R.S.A. § 8107(1). Failure to provide timely notice of claim bars that claim. § 8107(4) ("No claim or action shall be commenced against a governmental entity or employee . . . unless the foregoing notice provisions are

substantially complied with."); *see Darling v. Augusta Mental Health Institute*, 535 A.2d 421, 430 (Me. 1987).

Based on Mr. Long's response to a request for admissions, it is undisputed that he did not provide timely notice under Section 8107. Mr. Long admits that his notice of claim was not mailed to the Portland Police Department until February 20, 2015 and not received by the department until February 23, 2015. However, since Mr. Long's arrest (with the associated "assault") occurred on August 9, 2014, he was required to file a notice of claim on the City on or before February 5, 2015 – or 180 days after the alleged claims arose. The asserted notice was not timely, and his tort claims are therefore barred.

### B. Mr. Long's tort claims against Officer Abbott are, in any event, barred by absolute discretionary function immunity.

Even if Mr. Long could state viable claims and gave timely notice, his claims are barred by the immunity provisions of the Maine Tort Claims Act, 14 M.R.S.A. §§ 8101-8118 (2003) ("the Act"). The Act confers upon governmental employees absolute discretionary function immunity. § 8111(1)(C); *Carroll v. City of Portland*, 1999 ME 131, ¶ 6, 736 A.2d 279, 282 (emphasizing that that discretionary function immunity is absolute). Moreover, "discretionary immunity…applies unless the defendants' conduct 'clearly exceeded, as a matter of law, the scope of any discretion [they] could have possessed in [their] official capacity as [police officers].'" *Polley v. Atwell*, 581 A.2d 410, 414 (Me.1990) (emphasis in original).

It is established within this federal circuit that for purposes of the Act, "[a] law enforcement official's use of force is a discretionary act." *Comfort v. Town of Pittsfield*, 924 F. Supp. 1219, 1236 (D. Me. 1996); *see also Roberts v. State*, 1999 ME 89, ¶ 10, 731 A.2d 855, 857-58 (applying a four-factors test and holding that discretionary function immunity applies to claim that corrections officer shut a cell door on an inmate's hand). Similarly, an

officer's decision to effectuate a warrantless arrest is also a discretionary act. *See, e.g., Hegarty v. Somerset County*, 848 F. Supp. 257, 269 (D. Me. 1994), *aff'd in part, remanded in part on other grounds*, 53 F.3d 1367 (1st Cir. 1995).

Even assuming the accuracy of Mr. Long's version of events, Officer Abbott's alleged actions all fall within the scope of his discretion as a law enforcement officer. As discussed above in the context of qualified immunity, Officer Abbott could have reasonably believed that the elements of drinking in public and loitering existed given: the citizen complaint of 4-5 men drinking in public and loitering in front of 24 Preble Street; Mr. Long's presence (seated next to other gentleman) on the steps at 24 Preble Street with an open and apparently at least partially full beer can next to him; and his belief that there was a City posting nearby that prohibited the public consumption of alcohol. In addition, given the extremely limited alleged contact and minor amount of force that was allegedly used, a reasonable officer could have believed that the force described by Mr. Long was not objectively unreasonable. Therefore, Officer Abbott is entitled to summary judgment on all of Mr. Long's tort claims because he is protected by absolute discretionary function immunity.

## CONCLUSION

For the reasons set forth in this Motion and incorporated memorandum of law, Officer Abbott, Chief Sauschuck and the City of Portland are entitled to summary judgment on all claims in this matter.

Dated at Portland, Maine this 15th day of June, 2016.

> Attorneys for Defendants Officer Abbott,
> Michael Sauschuck and City of Portland
> MONAGHAN LEAHY, LLP
> 95 Exchange Street, P.O. Box 7046
> Portland, ME 04112-7046
> (207) 774-3906
> BY:  /s/ John J. Wall, III
> John J. Wall, III

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 15, 2016, I electronically filed **Defendants' Motion for Summary Judgment, with Incorporated Memorandum of Law** using the CM/ECF system, which will provide notice to me and the following other counsel of record: Michael Waxman, Esq. (Mjwaxy@aol.com).

Dated at Portland, Maine this 15th day of June, 2016.

> Attorneys for Defendants Officer Abbott,
> Michael Sauschuck and City of Portland
> MONAGHAN LEAHY, LLP
> 95 Exchange Street, P.O. Box 7046
> Portland, ME 04112-7046
> (207) 774-3906
> BY:  /s/ John J. Wall, III
> John J. Wall, III