UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| ARTHUR J. LONG, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | 2:15-cv-00291-JAW |
| BRENT D. ABBOTT, | ) | |
| Defendant. | ) | |

**ORDER ON MOTION *IN LIMINE* TO EXCLUDE BOOTH VIDEO DEPOSITION TESTIMONY AND 911 AUDIO RECORDING**

The Court is dubious about the admissibility of the contents of a deposition of a person who called the police and of a transcript of the recorded 911 of his call; however, the Court reserves its final ruling until trial.

## I. INTRODUCTION

In this 42 U.S.C. § 1983 action, Plaintiff Arthur Long asserts that Defendant Officer Brent Abbott of the Portland Police Department arrested him without probable cause, conducted an illegal search, and used excessive force in effectuating the arrest in violation of Mr. Long's constitutional rights. *Fourth (*and last*) Am. Compl. and Demand for Jury Trial* at 6 (ECF No. 28). In anticipation of trial, Officer Abbott seeks to introduce the video testimony of Robert Booth—the individual whose 911 call precipitated the arrest—as well as the audio recording of the 911 call.

In response, on May 17, 2017, Mr. Long filed a motion in limine to exclude both the video deposition testimony and the 911 audio recording. *Pl.'s Mot. in* Limine *to Exclude Booth Video Deposition Testimony and 911 Audio Recording* (ECF No. 83) (*Pl.'s Mot.*). Specifically, Mr. Long asserted that the testimony and audio recording were irrelevant, constituted inadmissible hearsay, and threatened to confuse the jurors because Officer Abbott was not aware of the precise details of Mr. Booth's phone call at the time he determined that probable cause existed to arrest and search Mr. Long. *Id.* at 2.

Officer Abbott filed an objection on May 19, 2017, arguing that Mr. Booth's testimony and the 911 call provide relevant background evidence and are relevant purposes of impeachment *Def.'s Obj. to Pl.'s Third Mot. in Limine to Exclude Booth Testimony and 911 Call* at 1 (ECF No. 85) (*Def.'s Obj.*). Additionally, Officer Abbott contends that the 911 call is admissible under several hearsay exceptions. *Id.* at 6.

The Court has serious doubts about the admissibility of Mr. Booth's video testimony and the 911 call. However, the Court reserves final ruling on the motion until trial.

## II.   DISCUSSION

### A.   Rule 403

Officer Abbott arrested Mr. Long for failing to provide identification outside 24 Preble Street in Portland, Maine, on August 9, 2014. Officer

2

Abbott argues that his arrest of Mr. Long was legal because he had probable cause to believe that Mr. Long was drinking in public and loitering. For support, he seeks to introduce the video testimony of Mr. Booth, who testified that prior to August 9, 2014, he frequently observed loitering and drinking outside 24 Preble Street. *Video Dep. of Robert Booth* 10:2–11:5 (ECF No. 84) (*Booth Dep.*). He argues that this testimony is relevant because it supports the reasonableness of Officer Abbott's belief that there was likely a sign prohibiting drinking in the area. *Def.'s Obj.* at 4.

Furthermore, Officer Abbott argues that Mr. Booth's testimony and the 911 call are relevant for impeachment purposes. *Id.* at 5. Specifically, Officer Abbott argues that if Mr. Long attempts to testify that he was not drinking on August 9, 2014, Mr. Booth's testimony and the content of the 911 call would undermine Mr. Long's credibility as a witness. *Id.* Officer Abbott argues that this is especially so given that only a few minutes passed between the time Mr. Booth called 911 to report a group of males drinking in front of the building and Officer Abbott's arrival on the scene to find Mr. Long. *Id.*

The Court preliminarily concludes that the probative value of Mr. Booth's testimony and the 911 call—offered either as background evidence or for impeachment purposes—will likely be substantially outweighed by a danger of confusing the jury. FED. R. EVID. 403. The validity of the arrest in this case turns on whether Officer Abbott had probable cause to believe that

3

Mr. Long was loitering or drinking in public. Whether Officer Abbott had probable cause to believe that Mr. Long was drinking in public depends in turn on whether it was reasonable for Officer Abbott to believe that there was a sign prohibiting drinking within 200 feet of 24 Preble Street. Both inquiries require the jury to assess the information available to Officer Abbott at the time he made the arrest. According to the parties' filings, Officer Abbott was only aware of a police dispatch that there were four to five males drinking and loitering at 24 Preble Street. *Pl.'s Mot.* at 1; *Def.'s Obj.* at 3. Yet Mr. Booth's call to police includes substantially more information than Officer Abbott received from the dispatch. *See Aug. 9, 2014 Telephone Conversation Btw. Shannon and Robert Booth* (ECF No. 86) (*911 Call*). In the 911 call, Mr. Booth reports that there is a "group of guys" in front of 24 Preble Street drinking, that they are "both white" and "wearing black t shirts," that they have "a black back pack [that] looks like it's full of Budweiser cans," and that they've got three or four cans on the stoop. *Id.* at 1–2.

At this stage, the Court concludes that it is highly likely that the jury might impute Mr. Booth's knowledge to Officer Abbott and therefore find that, based on the knowledge available to him, Officer Abbott had probable cause to believe that Mr. Long was drinking. Furthermore, although Mr. Booth's testimony and the 911 phone call may be relevant for impeachment purposes, the strong potential for confusion remains. Even with a limiting

4

instruction from the Court, the jury would be faced with a daunting test of mental gymnastics: they could consider Mr. Booth's testimony as evidence that Mr. Long was actually drinking in public, but not as evidence that Officer Abbott had probable cause to believe that Mr. Booth was drinking in public. The Court is hesitant to introduce such confusion into the jury's deliberations.

Moreover, there are significant conflicts between Mr. Booth's deposition testimony and his 911 call. In his 911 call, Mr. Booth reported to police dispatch that "[t]here's a group of guys down there right now who are drinking uh, they've got like a backpack full of beer . . . and they are drinking right now." *911 Call* at 1. Mr. Booth then went on to say that this was "only part of why I am calling" and he explained that "[p]eople are there like all day every day and we have a lot of young interns who come in and they will walk by there and I mean as early as earlier this afternoon uh, there was a group of guys there just openly uh smoking, smoking drugs. Out there." *Id*. He was asked whether it was going on there right now, and he responded, "There are people drinking there right, right now." *Id*.

He then noted that he was "more concerned about during our regular office hours" and he had "just dropped by [because] it was on the way home from the gym." *Id*. He said that he was on his way home and "like seeing these guys sitting there and just straight up drinking on the steps of the business [kind of] set me off and [kind of] made me make this call I've been

5

thinking about it for a while." *Id.* at 2. When asked to describe the people who were drinking, Mr. Booth said, "they're both white. I think they're both wearing black t shirts, um, I [kind of] didn't pay too much attention to them on my way in, but um, they've got a black back pack looks like it's full of Budweiser cans." *Id.* He said "they've got like 3 or 4 of them just out on the stoop and we've had to clean up beers and stuff like that in the past." *Id.* The dispatcher indicated that they would send someone out to move them along. *Id.*

During his May 9, 2017 deposition, Mr. Booth recalled the events leading to the 911 call differently. After describing some of the problems he had experienced with people loitering outside his business, he said that he had been prompted to make the 911 call because "[o]ne of our interns was harassed as they were coming back from their break and there were people who were drinking outside, so that led to me calling." *Booth Dep.* 11:10–13. He recalled that he told the dispatcher "more or less what I had seen out there and what was told to me by the intern who had come up with the complaint." *Id.* 13:3–5. He remembered that there was a "small group, two— I can't remember if it was two to four people, and this was three years ago, mind you. Two to four people who were sitting on the stoop. They were drinking. The clearest image that I remember, and I know I relayed this, is they were drinking Budweiser cans that were in a backpack. There was a man with long hair and a hat." *Id.* 13:20–14:5. He testified that it "was

6

dark" and "difficult to see," but he believed that "at least one of them was a white male, the one with the long hair and the hat." *Id.* 14:8–12. He said that he told the dispatcher about "[d]rinking on the stoop" and "the harassment of the intern." *Id.* 15:2–3. After listening to the 911 call, he confirmed that the details he provided the 911 dispatcher were accurate. *Id.* 17:14.

Comparing the 911 transcript with Mr. Booth's videotaped testimony, there are significant inconsistencies, both between and within the transcript and the testimony. Was there a group of people outside Mr. Booth's business or only two? Had they harassed an intern just before the 911 call or some other time? Had Mr. Booth seen the people on his way home from the gym or as he looked out at the group after the intern had been harassed? Had he actually seen the group as he entered the building from the gym or had he peeked at the group and only dimly seen them?

In addition, even where potentially consistent, Mr. Booth's 911 call and his deposition are problematical. Most significantly, there is and will be no evidence that Mr. Booth identified Arthur Long as one of the people who was drinking on the stoop and occasioned the 911 call. Mr. Booth was not shown a photograph of Mr. Long during his deposition, and Mr. Booth will not be present as a witness at trial. The jury will be asked to speculate whether Mr. Long was the person with the hat and long hair or was one of two people wearing a black t-shirt.

7

In light of the inconsistencies and ambiguities between and within the 911 transcript and the deposition testimony, the Court has serious misgivings about allowing either into evidence as substantive or impeachment evidence. As substantive evidence, there remains the danger that the jury will impute the contents of the 911 call to Officer Abbott's knowledge of the situation as the Officer dealt with Mr. Long. To be effective as impeachment evidence, the evidence must truly impeach and here, the evidence that Officer Abbott wishes to use to impeach Mr. Long is ambiguous at best and misleading at worst. In short, the Court is concerned that the jury will be led down a rabbit hole and will be asked to resolve unclear factual issues of marginal importance to the issues the case presents, namely whether Officer Abbott had probable cause to believe that Mr. Long had committed an offense that justified his demanding his identification and that further justified his arrest when Mr. Long refused to identify himself.

### B. Hearsay Exceptions

#### 1. Record of Regularly Conducted Business/Public Record

The Defendant argues that the recording of the 911 call is admissible as either a record of regularly conducted business or a public record. *Def.'s Obj.* at 6 n. 5 (quoting FED. R. EVID. 803(6), (8)). Several courts, including this one, have admitted 911 audio recordings under the business and public records exceptions. *See United States v. Cadieux*, 500 F.3 37, 40 (1st Cir. 2007) (affirming decision of the District of Maine to admit a 911 call as either

8

a business or public record); *see also Maples v. Vollmer*, No. CIV 12-0294 JB/RHS, 2013 U.S. Dist. LEXIS 55101, at \*58–61 (D.N.M. Mar. 31, 2013) (collecting cases).

However, even though the 911 record itself may be admissible under Rule 803(6) or 803(8), the "details as to the out-of-court statements made by the person who called 911 are not admissible unless covered by a separate hearsay exception." *United States. v. Sallins*, 993 F.2d 344, 347 (3rd Cir. 1993). This is because the out-of-court statements contained in a 911 audio recording constitute double hearsay. *See Bemis v. Edwards*, 45 F.3d 1369, 1372 (9th Cir. 1995) (holding that a 911 caller's statements were hearsay within hearsay, and the proponent of the 911 call was required to show that the statements fell within another hearsay exception); *United States v. Kuo*, No. 10-CR-671(S-1) (KAM), 2011 U.S. Dist. LEXIS 4387, at \*33-34 (E.D.N.Y. Jan. 18, 2011) (holding that although 911 audio recording may constitute a business record, the out-of-court statement by the 911 caller must fall under a separate exception because the call is under no business duty to report information to the 911 operators). Consequently, in order for the Mr. Booth's out-of-court statements on the 911 audio recording to be admissible, Officer Abbott must show that Mr. Booth's statements in the 911 recording fall within a separate exception to the hearsay rule.

### 2. Present Sense Impression

Officer Abbott argues that Mr. Booth's out-of-court statements in the 911 call constitute a present sense impression. *Def.'s Obj.* at 6. Under this exception to the hearsay rule, "a statement is not hearsay if it describes or explains an event and is made either while the declarant is perceiving the event or immediately thereafter, such that the contemporaneity of the event and the statement negate the possibility of deliberate falsification." *Davila v. Corporaction De P.R. Para La Difusion Publica*, 498 F.3d 9, 18 (1st Cir. 2007) (citing FED. R. EVID. 803(1)). Officer Abbott explains that Mr. Booth placed his 911 call "two to five minutes" after observing the men on the stoop of 24 Preble Street and argues that the call therefore "constitutes a classic example of present sense impression." *Def.'s Obj.* (citing *Booth Dep.* 13:13).

The record is muddled as to whether Mr. Booth's 911 call was based solely on his own personal observations or whether he was relating the impressions of an intern whom the individuals on the stoop allegedly harassed. *See Booth Dep.* 11:10–13. If Mr. Booth was reporting what the intern told him, this cannot qualify as Mr. Booth's present sense impression. Yet even if Mr. Booth personally observed the individuals drinking on the stoop of 24 Preble Street, admitting his 911 call still risks confusing the jury under Rule 403, and, for the reasons mentioned above, the Court is hesitant to permit Officer Abbott to offer the recording into evidence.

### 3. Recorded Recollection

The Defendant also argues, without support, that the 911 recording is admissible as a recorded recollection under Rule 803(5). Yet this assumes that Mr. Booth would be able to testify to the underlying content of the 911 call. A party may not introduce otherwise inadmissible evidence simply by testifying that they do not recall the details of the evidence as well as they once did. As the Court has already stated, the Court is chary of admitting the contents of Mr. Booth's 911 call given the significant confusion that it may entail. Therefore, the Mr. Booth may not introduce the 911 call as a recorded recollection.

### III. CONCLUSION

The Court RESERVES RULING on Plaintiff's Motion in Limine to Exclude Booth Video Deposition Testimony and 911 Audio Recording (ECF No. 83) until trial. Both parties shall refrain from mentioning Mr. Booth's testimony or the content of Mr. Booth's 911 call during opening arguments and shall approach the bench before offering either into evidence.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 23nd day of May, 2017