UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| ARTHUR J. LONG, | ) | |
| --- | --- | --- |
| Plaintiff, | ) | |
| v. | ) | 2:15-cv-00291-JAW |
| OFFICER BRENT D. ABBOTT, | ) | |
| Defendant. | ) | |

**ORDER ON PLAINTIFF'S MOTION FOR NEW TRIAL**

The Court denies the Plaintiff's motion for new trial because it concludes that its instruction on the meaning of possession under the drinking in public statute was correct and, if not, the Plaintiff's failure to propose any jury instructions on the definition of possession, and his failure to object to the given instruction either at the charge conference or at trial, doom his demand for a new trial.

**I. BACKGROUND**

**A. Procedural History**

On July 22, 2015, Arthur J. Long filed a lawsuit pursuant to 42 U.S.C. § 1983 in this Court against Brent Abbott, an officer with the Portland Police Department, and others, alleging that Officer Abbott had violated his constitutional rights by arresting him without probable cause and by using excessive force against him in effecting the arrest.[1] *Compl.* (ECF No. 1). The case was tried before a jury on May

---

[1] The jury found for Officer Abbott not only on whether Officer Abbott had probable cause to arrest Mr. Long, but also on Mr. Long's allegation that Officer Abbott used excessive force during the arrest. *Verdict Form* at 1 (ECF No. 97). Mr. Long does not challenge the excessive force verdict.

30–31, 2017, and on May 31, 2017, the jury issued a verdict in favor of Officer Abbott. *Jury Verdict* (ECF No. 97). On May 31, 2017, the Court duly reduced the verdict to judgment. *J.* (ECF No. 98).

On June 5, 2017, Mr. Long filed a motion for partial new trial. *Pl.'s Mot. for Partial New Trial Pursuant to F.R. Civ. P. 59(a)(1)(A)* (ECF No. 99) (*Pl.'s Mot.*). On June 15, 2017, Officer Abbott objected. *Def.'s Obj. to Pl.'s Mot. for Partial New Trial Pursuant to F.R. Civ. P. 59(a)(1)(A)* (ECF No. 100) (*Def.'s Opp'n*). On June 19, 2017, Mr. Long replied. *Pl.'s Reply Mem. Pursuant to F.R. Civ. P. 59(a)(1)(A)* (*Pl.'s Reply*).

**B.    The Trial**

In response to a complaint from a local businessperson, Officer Brent Abbott was dispatched by the Portland Police Department to 24 Preble Street in Portland, Maine, at around 11:39 p.m. on August 9, 2014. The police dispatcher told Officer Abbott that there were four or five males drinking beer just outside 24 Preble Street. When Officer Abbott arrived shortly after dispatch, he encountered two males on the steps of 24 Preble Street, and he noticed beers all around the stoop. Officer Abbott observed that the cans of beer were within easy reach, perhaps two inches, away from Mr. Long. At least one of the cans of beer near Mr. Long was sweating, which suggested to Officer Abbott that the beer inside the can was still cold since it was a warm night. Officer Abbott did not see either man actually drinking beer.

Officer Abbott concluded that there was probable cause to believe that Mr. Long had been drinking in public, and the officer demanded Mr. Long identify himself by giving the officer his name and date of birth. Mr. Long refused to identify himself.

2

This refusal led to Mr. Long's arrest. The jury concluded that Mr. Long had not proven by a preponderance of the evidence that Officer Long lacked probable cause to arrest him for failing or refusing to identify himself in violation of Mr. Long's federal constitutional rights. *Verdict Form* at 1 (ECF No. 97).

## C. The Legal Issue

These facts presented a layered legal issue. In order for Officer Abbott to properly arrest Mr. Long for failing to provide identification, Officer Abbott had to have probable cause to believe that Mr. Long had committed or was committing an underlying crime. The underlying crime that Officer Abbott believed Mr. Abbott had committed was drinking in public, a violation of 17 M.R.S. section 2003-A(2):[2]

> A person is guilty of public drinking if the person drinks liquor in any public place within 200 feet of a notice posted conspicuously in the public place by the owner or authorized person that forbids drinking in the public place or after being forbidden to do so personally by a law enforcement officer, unless the person has been given permission to do so by the owner or authorized person.

Setting aside other issues, the drinking in public statute requires that the person be actually drinking liquor. *Id.* ("if the person drinks liquor"). However, the statute goes on to state:

> The possession of an open container of liquor in a public place is prima facie evidence of a violation of this section.

17 M.R.S. § 2003-A(3).

---

[2] Officer Abbott initially contended that there was also probable cause to believe that Mr. Long was guilty of the crime of loitering, but Attorney Wall acknowledged during closing argument that there was no basis to conclude that Mr. Long had been guilty of the crime of loitering.

3

On this issue, echoing the statute and interpreting Maine caselaw, the Court instructed the jury:

> Maine law also provides that the possession of an open container of liquor in a public place is prima facie evidence of a violation of law. If you find that Mr. Long possessed an open container of liquor, then the law permits the inference from this fact that Mr. Long was in violation of this law. The law also provides that possession of an object means that the object was subject to a person's dominion and control. To find that Mr. Long possessed an open container of liquor and that the rule of prima facie evidence applies, Mr. Long had to have the object within his dominion and control.

Although he did not object to this instruction at trial, Mr. Long is now objecting to the instruction on the ground that the Court erred when it instructed the jury on constructive possession. In his motion for new trial, Mr. Long contends that the Court should have instructed the jury that this statute requires actual, not constructive possession. *Pl.'s Mot.* at 1–3.

## II. THE PARTIES' POSITIONS

### A. Arthur Long's Motion

In his motion for new trial, Mr. Long asserts that the Court should have instructed the jury that "possession" means only actual, not constructive possession. *Id.* at 1. To support his argument, Mr. Long cites three cases, two from the state of Iowa and the other from the state of Washington, in which he argues these state courts required actual possession of liquor to prove criminal responsibility in similar public drinking statutes. *Id.* at 2–3 (citing *In the Interest of W.B.*, 641 N.W.2d 543, 546–47 (Iowa Ct. App. 2001); *State v. Atkinson*, 620 N.W.2d 1, 3 (Iowa 2000); *State v. Duncan*, 43 P.3d 513, 517–21 (Wash. 2002)). Mr. Long claims that Officer Abbott

4

failed to request this instruction about constructive possession until May 25, 2017, which he says was too late. *Id.* at 3–4. Finally, Mr. Long disputes whether the Court should have applied the concept of constructive possession to alcohol, the possession of which is legal but restricted, as opposed to illegal drugs, the possession of which is simply illegal. *Id.* at 4.

### B. Officer Abbott's Response

In response, Officer Abbott observes that Mr. Long did not object to the instruction given at trial. *Def.'s Opp'n* at 1. Therefore, he contends that Mr. Long must demonstrate "plain error" to prevail on his motion for new trial. *Id.* at 4 (citing *Smith v. Kmart Corp.*, 177 F.3d 19, 26 (1st Cir. 1999); *Muniz v. Rovira*, 373 F.3d 1, 6 (1st Cir. 2004)). Officer Abbott also points out that it was Mr. Long who requested that the Court instruct the jury on the concept of possession, and he contends, citing Maine caselaw, that the Court's instruction was based on "well-established Maine law applying the concept of possession in analogous statutes." *Id.* at 5–6. Officer Abbott urges the Court to disregard the cases from Iowa as being unhelpful on an issue of Maine law. *Id.* at 6. Finally, Officer Abbott disputes Mr. Long's contention that the Court infused new concepts of possession late during the trial. *Id.* at 8.

### C. Arthur Long's Reply

In his reply, Mr. Long emphasizes that the pending motion is a motion under Rule 59, not Rule 50, and contends that Rule 59 grants the Court greater flexibility than Rule 50. *Pl.'s Reply* at 1–2. Mr. Long reiterates his position that possession must be actual to violate 17 M.R.S. section 2003-A(2). *Id.* at 2.

5

## III. DISCUSSION

### A. Legal Standard

Under Rule 59, a district court "has the power and duty to order a new trial whenever, in its judgment, the action is required to prevent injustice." *Bartlett v. Mut. Pharm. Co., Inc.*, 760 F. Supp. 2d 220, 228 (D.N.H. 2011) (quoting *Rodriguez-Garcia v. Miranda-Marin*, 610 F.3d 756, 765 (1st Cir. 2010)). In making that determination, the trial court "is free to independently weigh the evidence," including "the credibility of witnesses." *Jennings v. Jones*, 587 F.3d 430, 436 (1st Cir. 2009). At the same time, a court may not "displace a jury's verdict merely because [it] disagrees" with the outcome. *Id.* A new trial may be granted "only if the verdict is against the law, against the weight of the credible evidence, or tantamount to a miscarriage of justice." *Crow v. Marchand*, 506 F.3d 13, 19 (1st Cir. 2007).

As the moving party, it is Mr. Long's burden to show that there were "errors and defects" at trial that affected his "substantial rights." *Bartlett*, 760 F. Supp. 2d at 228; 11 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2882 (2012 ed.) ("The district court in passing on a motion for a new trial or in considering whether to set aside a verdict or otherwise to disturb a judgment or order must be guided by what substantial justice requires and must disregard errors that were harmless"); FED. R. CIV. P. 61.

Here, Mr. Long's sole basis for demanding a new trial is that the court erred in giving a jury instruction on the concept of "possession" under Maine law. Accordingly, the provisions of Federal Rule of Civil Procedure 51 apply to Mr. Long's Rule 59

6

motion. Rule 51 sets forth a procedure for parties to request jury instructions and to object to jury instructions as given. FED. R. CIV. P. 51. Rule 51 adopts a "plain error" standard for instructions where the moving party failed to make a timely objection to the instruction as given. *Id.* (d)(2); *Colon-Millin v. Sears Roebuck de P.R., Inc.*, 455 F.3d 30, 40 n.7 (1st Cir. 2006) ("[A] court may review unpreserved objections to jury instructions for plain error"). Moreover, Rule 51 requires that if the moving party failed to object to the instructions, plain error will be found only if the error "affects substantial rights." *Id.* "The standard is high, and 'it is rare indeed for a panel to find plain error in a civil case.'" *Diaz-Fonseca v. Puerto Rico*, 451 F.3d 13, 36 (1st Cir. 2006) (quoting *Chestnut v. City of Lowell*, 305 F.3d 18, 20 (1st Cir. 2002) (en banc)).

## B. The Draft Instruction

On March 17, 2017, the Court set this matter for trial for the May 2017 term. *Trial List* (ECF No. 43). On April 7, 2017, the United States Magistrate Judge held a final pretrial conference and issued an order requiring each party to submit proposed jury instructions by April 26, 2017. *Report of Final Pretrial Conf. and Order* at 3 (ECF No. 56). On April 26, 2017, Officer Abbott submitted a set of proposed jury instructions, including an instruction that tracked the language of the Maine criminal law statute that prohibits drinking in public under certain circumstances. *Def.'s Proposed Jury Instructions* at 6 (ECF No. 73). Officer Abbott also asked the Court to instruct the jury:

> Under Maine law, the possession of an open container of liquor in a public place is sufficient evidence to sustain a violation of this section unless it is rebutted with competent evidence at trial.

7

*Id.* (citing 17 M.R.S. § 2003-A). Mr. Long failed to propose any jury instructions before trial.

On May 24, 2017, the Court sent counsel a draft set of preliminary and final jury instructions and asked whether either counsel objected to them. *Pl.'s Mot.*, Attach. 1, *Email Stream* at 10–11 (*Email Stream*). The Court did not incorporate in its draft instructions, Officer Abbott's proposal concerning the prima facie impact of possession of an open container of liquor in a public place. On May 25, 2017, noticing this omission, Officer Abbott's counsel reiterated his request that the Court instruct the jury in accordance with 17 M.R.S. § 2003-A(3).[3] *Id.* at 2.

On May 26, 2017, Mr. Long's counsel responded:

> I am responding to attorney Wall's latest request for a change in the jury instructions. He cites to 17 M.R.S. [§] 2003-A(3) and the language about possession of an open container in a public place comprising *prima facie* evidence of a violation of this section. Yet, he provides no definition for the term "possession." This is problematic . . . . Also, there is no definition of "possession" in this particular chapter but in crimes involving possession of drugs, the following definition is given" "a person is guilty of unlawful **possession** of a scheduled drug if the person intentionally or knowingly possesses what the person knows or believes to be a scheduled drug, which is in fact a scheduled drug." 17[-]A M.R.S. [§] 1107-A(1). In a case such as the instant one where the open can of beer was not on Mr. Long's person, not held by him, not being transported by him, where Officer Abbott did not observe him holding it or drinking it or transporting it, where Mr. Long denied it was his, denied that he had been drinking from it, I do not believe this language is appropriate. It simply begs the same question—did Officer Abbott have probable cause to believe each element of the crime of drinking in public. Certainly, if Officer Abbott had personally observed Mr. Long "possessing" the beer, then we would have a *prima facie* case of Drinking in Public. That he did not observe possession means that section 3 of

---

[3]   17 M.R.S. § 2003-A(3) provides:

   The possession of an open container of liquor in a public place is prima facie evidence of a violation of this section.

8

> this statute is not applicable. Mr. Long objects to this language being added to the jury instruction as it will likely confuse the jury and add nothing helpful.

*Id.* at 1–2 (emphasis in Attorney Waxman's email).

As quoted above, in response to counsel's requests, the Court incorporated both suggestions, including a definition of possession as Attorney Waxman wanted and the prima facie evidence standard for possession as Attorney Wall requested. Neither counsel objected to this instruction either at the charge conference before the instruction was given or at sidebar after the instruction was given.

In these circumstances, given not only his failure to object to the jury instruction as proposed or as given, but also his request that the jury be instructed on the meaning of possession, Mr. Long is subject to the plain error standard of review.

### C. The "Possession" Instruction

Maine's Drinking in Public statute, 17 M.R.S. § 2003-A, does not contain a definition of "possession" of liquor. The Maine Supreme Judicial Court addressed this statute in *State v. Laplante*, 534 A.2d 959 (Me. 1987). *Accord State v. DiPietro*, 2009 ME 12, ¶¶ 13–14, 964 A.2d 636. In *Laplante*, the Maine Law Court upheld an investigatory stop of the occupants of a motor vehicle where the officer observed open cans of beer in the vehicle. *Id.* at 962. The *Laplante* Court rejected the defendant's contention that the presence of open cans of beer in the vehicle did not establish that all of the occupants were in possession of the beer:

> Although [Trooper] Arnold did not directly observe Nault drinking, Nault's presence in an automobile containing a twelve pack of beer and

9

open cans was enough to allow Arnold to warn Nault and his companions pursuant to 17 M.R.S. § 2003-A.

*Id.* at 963. The *Laplante* Court established that to prove a violation of section 2003-A, the State does not need to demonstrate actual possession of the liquor as there is no evidence that the trooper in the *Laplante* case saw any of the occupants in actual possession of the liquor.

Given that the standard in section 2003-A is not actual possession, the Court looked to Maine law in analogous cases to provide a definition of possession that would assist the jury in analyzing the evidence in Mr. Long's case. In *State v. Wilson*, 2015 ME 148, ¶ 15, 127 A.3d 1234, the Maine Supreme Judicial Court wrote:

> We have defined "possession" as the term pertains to physical objects. For example, possession of drugs occurs when the drugs are "subject to [the defendant's] dominion and control. *State v. Deering*, 1998 ME 23, ¶ 12, 706 A.2d 582 (quoting *State v. Ellis*, 502 A.2d 1037, 1040 (Me. 1985) (alteration in original); *see also State v. Erving*, 558 A.2d 703, 704 (Me. 1989) ("Possession of a physical object may be proved by showing that the accused . . . either had immediate physical control . . . of the object or knew where it was and had the intention and ability to gain physical control . . . of it." (quotation marks omitted)).

*Id.* ¶ 15. The Court used the "dominion and control" language from *Wilson* in drafting its jury instructions in Mr. Long's case.[4]

Mr. Long argues that the "dominion and control" language should not have applied to drinking liquor because liquor—unlike marijuana, cocaine, or heroin—is

---

[4] The Court elected not to charge the more specific language in *Wilson*—"had immediate control . . . or knew where it was and had the intention and ability to gain physical access"—because this language, in the Court's view, would have been highly unfavorable to Mr. Long since the evidence established that Mr. Long knew the location of the beer can and had the ability to gain access to it, leaving the only jury question whether he intended to gain physical access to the can of beer. To add this language would have come too close to making a judicial comment on the actual evidence in this case.

10

legal for an adult to possess. *Pl.'s Mot.* at 4. The Court disagrees. In *Wilson*, the Maine Supreme Judicial Court cited *Erving* for the legal definition of possession. *Erving* involved unlawful possession of deer or parts of deer during closed season, a violation of 12 M.R.S. § 7406. 558 A.2d at 703. Like liquor, there is nothing inherently illegal about possession of deer meat, but possession of deer meat during a closed season or possession of liquor in public may become illegal depending upon the circumstances surrounding the possession. In general, the definition of possession for an illegal object is the same in Maine as the definition of possession of a legal object the possession of which is made illegal by the circumstances of the possession. Ironically, though Mr. Long now complains about the use of illegal drug possession definitions, it was Mr. Long's counsel who first referred to the definition of possession in the context of illegal drug possession. *Email Stream* at 1 (citing 17-A M.R.S. § 1107-A(1), unlawful possession of a controlled substance).

Nor is the Court convinced by Mr. Long's citation of state of Iowa and state of Washington caselaw. The Court reads *In the Interest of W.B.*, 641 N.W.2d 543 (Iowa Ct. App. 2001), as generally congruent with Maine's definition of possession as including actual possession or control. The Iowa Court of Appeals defined possession for purposes of a minor in possession of alcohol as "either actual possession or constructive possession based on facts which permit the inference of an intent to possess or control alcoholic beverages." *Id.* at 546. It is true that the Iowa Court of

Appeals distinguished between possession of legal and illegal substances, but on this point, Maine law, not Iowa law, controls Mr. Long's case.[5]

The state of Washington case involved a stop and frisk for possession of an open container containing liquor in public, where the liquor was in a brown bag at a public bus stop about six inches away from the defendant. *Duncan*, 43 P.3d at 514. But the Washington Legislature had recently decriminalized the opening or consumption of liquor in a public place, reducing it from a misdemeanor to a civil infraction. *Id.* at 516. This change in classification caused the Supreme Court of Washington to conclude that the stop and frisk principles of *Terry v. Ohio*, 392 U.S. 1 (1968), did not extend to civil violations. *Id.* at 519.

At the same time, the Supreme Court of Washington strictly interpreted the meaning of possession under this statute. Agreeing that a person could actually or constructively possess liquor and commit a civil violation, the *Duncan* Court noted that the officers did not "witness Duncan drinking the alcohol, or holding the bottle, or reacting to their approach" and therefore, the civil violation "did not occur in their presence." *Id.* at 521. There is no indication that Maine has adopted this narrow an interpretation of constructive possession.

The Court concludes that its jury instruction on possession was not error at all, much less plain error, and does not provide a basis for granting Mr. Long a new trial.

---

[5] Mr. Long also cites *State v. Atkinson*, 620 N.W.2d 1 (Iowa 2000). But the Court does not view *Atkinson* as helpful. In *Atkinson*, the Supreme Court of Iowa observed that in Iowa, the mere presence of illegal drugs in a motor vehicle is not sufficient to establish that a passenger exercised dominion and control over the drugs. *Id.* at 4. By contrast, in *Laplante*, the Maine Law Court concluded that a passenger's presence in a motor vehicle where there is an open can of beer is sufficient to generate probable cause to conclude that the passengers were in possession of the liquor within the meaning of 17 M.R.S. § 2003-A.

Mr. Long was the party who requested an instruction on the definition of possession, and cannot now be heard to complain that the Court accommodated his request. Mr. Long failed to provide the Court with an instruction on the proper definition of possession, failed to object to the Court's suggestion as to the proper definition of possession at the charge conference, and failed to object to the Court's instruction on possession during trial.

Moreover, the Court agrees with Mr. Long that the jury was entitled to guidance on the legal meaning of possession especially in the context of this case, where Mr. Long denied possession of the nearby can of beer, but Officer Abbott concluded that Mr. Long likely possessed it.

Finally, the definition of possession contained in the final jury instructions is wholly consistent with this Court's understanding of Maine criminal law's definition of actual and constructive possession of objects. Rather than giving a fuller definition, which would have disadvantaged Mr. Long, the Court allowed counsel during their closing arguments to attempt to convince the jury that the facts favored their respective views of his dominion and control of the can of beer based on a more general instruction. In short, the Court concludes that it made no error in instructing the jury on the definition of possession of liquor under Maine law.

## IV. CONCLUSION

The Court DENIES Arthur J. Long's Motion for Partial New Trial Pursuant to F. R. Civ. P. 59(a)(1)(A) (ECF No. 99).

SO ORDERED.

                                              <u>/s/ John A. Woodcock, Jr.</u>
                                              JOHN A. WOODCOCK, JR.
                                              UNITED STATES DISTRICT JUDGE

Dated this 27th day of June, 2017